UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAMUEL ROOSEVELT JONES #364868,

        Plaintiff,

v.

C. LAWRY, et al.,

        Defendants.
_____/

Case No.  2:19-cv-00049

Hon.  Gordon J. Quist
U.S. District Judge

**REPORT AND RECOMMENDATION**

**I.  Introduction**

This Report and Recommendation (R&R) addresses the summary judgment motion filed by Defendants (ECF No. 127) and Plaintiff's motion to strike Defendants' motion for summary judgment (ECF No. 129), which the Court views as a response to the motion.

State prisoner Samuel Roosevelt Jones filed this civil rights action pursuant to 42 U.S.C. § 1983 on February 22, 2019.  He alleges, in an amended complaint filed on May 3, 2019, that his rights were violated while he was confined at the Marquette Branch Prison (MBP).  (ECF No. 14.)  Jones is now confined in the Ionia Correctional Facility (ICF), in Ionia, Michigan.  Plaintiff's unverified amended complaint alleged that Defendants Corrections Officers (CO) Lawry, Pucel, Schroderus, Van Ackers, and Harris, and Lieutenant Sebley, Captain Maekla, and Inspector(s) Jane/John Doe violated his rights.  (*Id.*)

In the Court's June 14, 2019, screening opinion, the Court dismissed all claims alleged in the amended complaint except for Jones's Eighth Amendment excessive force claim against COs Lawry, Pucel, and Schroderus. (ECF No. 16, PageID.94, 102.)

COs Lawry, Pucel, and Schroderus filed a motion for summary judgment arguing that no genuine issue of material fact exists on Jones's Eighth Amendment excessive force claims against them. Defendants' motion is supported by sealed videos of the incident on March 18, 2019. The videos depict an appropriate use of force under the circumstances. In addition, Jones's medical records indicate that he said he was not injured. In the opinion of the undersigned, Jones has failed to support his claim that excessive force was used against him. It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

**II. Factual Allegations**

Jones asserts that on March 18, 2019, COs Lawry, Pucel, and Schroderus conducted a "shakedown" or a search of his cell at MBP. (ECF No. 14, PageID.75-76.) Jones says that this was simply an excuse for a planned assault on him, which he says began once he turned around to look back at his cell while being escorted from his cell. (*Id*.) Jones says his "face was ran [sic] into a glass window and face was then slammed into the concrete floor of an unsanitary shower gutter." (*Id*.) Jones further states he sustained an injury to his face, but he was denied medical care and

placed in belly restraints. (*Id*.) Jones received misconduct reports for assault and battery on staff and was found guilty of those misconducts. (*Id*.)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

### IV. Eighth Amendment Excessive Force

Jones alleges that Defendants acted with excessive force, thereby causing injuries to his face while he was being escorted from his cell. Defendants argue that they are entitled to summary judgment on the claims asserted against them because the minimal amount of force used was necessary.

3

The Eighth Amendment limits the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

To establish an Eighth Amendment claim, Plaintiff must satisfy both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). "The subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298).

Under the subjective component, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992). The Court "must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015). In determining whether the use of force is malicious or sadistic, the Court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the

4

responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

Under the objective component, the pain inflicted must be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson*, 501 U.S. at 298). The Court's inquiry regarding the seriousness of the injury is "contextual" and is "responsive to contemporary standards of decency." *Hudson*, 503 U.S. at 8–9. While the extent of an inmate's injury may help determine the amount of force used by the prison or jail official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). When prison or jail officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, "[w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

To establish a genuine issue of material fact regarding the **objective component** of this claim, Jones would need to establish that the pain he suffered was "sufficiently serious." *Williams*, 631 F.3d at 383. Although the Court's inquiry regarding the seriousness of Jones's injuries is contextual and the seriousness is not dispositive of his claim, the seriousness of the injuries reflects the amount of force that Jones was subjected to when he was taken to the ground.

Jones asserts that he suffered with a swollen right eye and was refused medical care. (ECF No. 129, PageID.817.) Jones asserts that the record shows he was not offered medical care. (*Id*.) Defendants argue that Jones has failed to show that he suffered any serious injuries. Nurse Dutiel examined Jones after the incident. (ECF No. 128-8, PageID.729-730.) Nurse Dutiel noted that Jones was standing

5

under his own power and was breathing normally. (*Id.*, PageID.730.) Nurse Dutiel did not see any visible marks, bruises, cuts, scrapes, or swollen areas on Jones's body. (*Id.*) Nurse Dutiel attests that Jones stated he did not have any injuries. (*Id.*) Nurse Dutiel's Clinical Progress Note is attached below:

**Clinical Progress Note**

Comments:
Prisoner Jones #364868 required evaluation post altercation which required custody to safley bring prisoner Jones to the ground related to a cell shake down. Prisoner Jones was standing under own power, respritory status normal, no visable alterations in general skin integrity were noted, prisoner Jones denied any injury. Prisoner Jones #364868 refused any medical assesment.

Date: 03/18/2019
Time: 9:15 PM
User: Jayson J. Dutiel, RN

(ECF No. 128-9, PageID.733.) The medical evidence establishes that Jones suffered no visible injuries, refused a medical assessment, and denied any injury.

Second, the video of the incident, which will be discussed below, appears to show actions by Defendants that were not particularly violent regardless of what precipitated the action. Jones asserts that he was fully compliant with the officers and simply looked back at his cell while it was being searched. The Defendants argue that Jones was threatening CO Lawry, that he would not move away from his cell or comply with orders, and that he resisted the officers when they tried to move him. The video evidence confirms Defendants' version of the events.

Third, Jones failed to submit any evidence, medical or otherwise, to verify that the injury he allegedly suffered – a swollen right eye – was caused by the Defendants. Without the benefit of verifying evidence regarding the cause of Jones's injuries or

the extent of the injuries as he alleged in his complaint, Jones fails to show a genuine issue of fact regarding the seriousness of his injuries.

Despite Jones failing to establish a genuine issue of fact regarding the seriousness of his injuries, Jones may still assert viable Eighth Amendment excessive force claims if he can show that Defendants applied force maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 9.

The **subjective component** is satisfied when the Defendants apply force "maliciously and sadistically to cause harm." *Id*. at 5-6. To conclude whether Defendants' applied force maliciously and sadistically, the undersigned analyzes the reasonableness of Defendants' use of force. *Id*. at 6-7. And reasonableness is determined by (1) the relationship between that need and the amount of force used, (2) the threat "reasonably perceived by the responsible officials," and (3) any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 6-7.

COs Shroderus and Pucel assisted COs Harris and Lawry while they searched Jones's cell. (ECF No. 128-4, PageID.708 (affidavit of CO Shroderus), and ECF 128-5, PageID.714 (affidavit of CO Pucel).) Jones was a level V prisoner, which is the highest security level. (*Id*.) MDOC policy requires two Corrections Officers to escort Level V prisoners from their cell. (*Id*.) CO Harris placed belly chains on Jones and COs Shroderus and Pucel escorted Jones to the vestibule area in front of his cell. (*Id*.) As Jones came out his cell, he was threatening CO Lawry by telling him to "watch out" and "I'm going to get you bitch." (ECF No. 128-4, PageID.709-710, and ECF No. 128-5, PageID.714-715.) Jones refused orders to move forward,

7

so the COs placed him against the wall to secure Jones. (*Id.*) Jones continued to turn back, resisted commands, and pushed back against the officers. (*Id.*) After a brief struggle, the officers took Jones to the floor and placed leg restraints on him. (*Id.*) LT Sebaly arrived on the scene and attempted to calm Jones down because Jones continued to yell at CO Lawry. (*Id.*)

Lt. Sebaly issued a Critical Incident Report summarizing what took place:

> Officer Schroderus tried to get prisoner Jones to move away from officer Lawry as he was threatening officer Lawry by stating "Watch out for me, I will get you bitch." Officer Schroderus ordered prisoner Jones to walk forward and exit the cell front area several times. Prisoner Jones refused the orders and continued to threaten officers Lawry and Harris. As officer Schroderus and Pucel attempted to guide prisoner Jones toward the shower stall area to secure him. Prisoner Jones began pushing back while continuing to threaten staff. Prisoner Jones then raised his left leg in a possible attempt to kick. Officers Schroderus and Pucel placed prisoner Jones against the vestibule for base cell 5. Prisoner Jones continued to threaten staff and attempted to turn toward officer Lawry. Officer Schroderus and Pucel continued to give prisoner Jones repetitive orders to calm down, face the wall, and stop resisting. Prisoner Jones continued to push back against officers Schroderus and Pucel from the vestibule wall. Officers Schroderus and Pucel placed prisoner Jones on the floor to better control him. Once prisoner Jones was secured on the floor officer Harris placed leg irons on prisoner Jones. Officer Lawry maintained control of prisoner Jones's legs while officer Schroderus and Pucel maintained control of prisoner Jones upper torso. Officer Lawry called for assistance via the institutional radio. Lt. Eugene Sebaly arrived and instructed officer Harris to retrieve the hand-held camera. Officer Harris began recording with the hand-held camera. Lt. Sebaly began de-escalation by talking to prisoner Jones and telling him to calm down. Sgt. William Torongo arrived. Sgt. Torongo and officer Lawry shook down prisoner Jones's cell. Once the cell shakedown was complete and prisoner Jones calmed down, Lt. Sebaly instructed staff to place prisoner Jones back in his cell. Officers Schroderus and Pucel stood prisoner Jones up and escorted him to base cell 4 and secured the door. Officer Schroderus removed the leg irons and belly chains and exited the vestibule without further incident. RN Jayson Dutiel evaluated prisoner Jones and found him to be without injury.
> Included in this report are the following documents:

(ECF No. 128-10, PageID.737.)[1]

The video evidence fails to support Jones's claim of injury and excessive force, and instead provides strong support for Defendants' description of the event. There are two videos that depict the incident. The first video is a recording from a fixed security camera located outside of Jones's cell. The first video depicts the entire 13-minute incident. (The video begins at time 6:57:10.) That video does not have sound. The video shows four officers arriving at Jones's cell. Two officers escorted

---

[1] Similar Critical Incident Participant Reports were made by CO Schroderus (ECF No. 128-10, PageID.744), CO Pucel (*Id.*, PageID.746), CO Harris (*Id.*, PageID.748), and CO Lawry (*Id.*, PageID.750).

Jones from his cell (time 6:59:24), but Jones was not cooperating or walking away from his cell on his own (time 6:59:30 to 6:59:45). The video shows the officers trying to get Jones to walk away from his cell, but he resisted and turned back toward his cell. The officers then moved Jones against a glass wall (time 6:59:48). Jones immediately resisted and was taken to the ground (time 7:00:00 to 7:00:05).

On the first video, a Corrections Officer can be seen arriving with a handheld camera (time 7:02.50.) The handheld camera provided the second video that contains sound. In the first video, Jones is shown being assisted off the ground and taken to his cell (time 7:07:15 to 7:07-20).

The second video, which commences after Jones was taken to the ground, shows Jones upset and raising his voice at Officers. Jones indicated that one of the Officers should not be there and he asserted that he would be filing a lawsuit. Jones spoke almost continuously during the time that the video was recording and raised his voice numerous times. The video is approximately 7 minutes long and depicts the time from when Jones was placed on the ground until he was taken back to his cell and his restraints removed.

Neither of the videos shows an injury to Jones. There is not a clear image of Jones's face, but the videos fail to establish that Jones received an injury. Jones never indicated that he was injured in the video with sound, and he never requested medical assistance. The videos show that only minimal force was used to remove Jones from his cell and to restrain him despite his constant resistance and refusal to cooperate with the Officers. The videos do not show that the Officers used excessive

force when restraining Jones. To the contrary, the videos depict an appropriate use of force against a prisoner who was not cooperating with Corrections Officers. The videos do not support Jones's claim of excessive force. *See Scott v. Harris*, 550 U.S. 372, 380-381 (2007) (noting that a court should "view[] the facts in the light depicted by the videotape"). In the opinion of the undersigned, Jones has failed to establish a genuine issue of fact that Defendants violated his Eighth Amendment rights by applying excessive force to him.

## V. Qualified Immunity

Alternatively, Defendants move for dismissal based upon qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In making a qualified immunity determination, the court must decide whether the facts as alleged or shown

make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 232. For a right to be clearly established, "the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014). As the Sixth Circuit explained in *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014), "[i]n the past, we have held that 'if there is a genuine issue of fact as to whether an officer's use of force was objectively reasonable, then there naturally is a genuine issue of fact with respect to whether a reasonable jail official would have known such conduct was wrongful.'" *Id.* (citing *Kostrzewa v. City of Troy*, 247 F.3d 633, 642 (6th Cir. 2001))

If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id.*

The undersigned concludes that Jones failed to establish a genuine issue of material fact that Defendants violated his Eighth Amendment rights by applying excessive force to him. As a result, it is recommended that the Court conclude that Jones's claims are barred by qualified immunity because no constitutional violation occurred. *Pearson*, 555 U.S. at 232.

## VI. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

Dated: January 19, 2022 /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).